**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JANE DOE (C.T.K), | * | |
| **Plaintiff,** | * | |
| v. | * | **Civ. No. DLB-24-2836** |
| CHOICE HOTELS INTERNATIONAL, INC., *et al.*, | * | |
| | * | |
| **Defendants.** | | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Jane Doe alleges that she was the victim of sex trafficking at a Comfort Suites hotel in Appleton, Wisconsin. The Appleton Comfort Suites is operated by App Pro of Appleton, Inc. ("App Pro"), which is a franchisee of Choice Hotels International, Inc., a corporation with its principal place of business in Rockville, Maryland. Doe sued Choice Hotels International, Inc., Choice Hotels International Service Corp. (collectively, "Choice Hotels"), and App Pro, alleging violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1581 *et seq.* Choice Hotels and App Pro move to dismiss Doe's complaint. Both of them argue that this case should be dismissed because venue in this district is improper and Doe fails to state a claim upon which relief can be granted. Choice Hotels argues alternatively that this case should be transferred to the Eastern District of Wisconsin. App Pro makes the additional argument that the claims against it should be dismissed because this Court lacks personal jurisdiction over it. For the following reasons, Choice Hotels' motion to transfer is granted. This action is transferred to the U.S. District Court for the Eastern District of Wisconsin. The motions to dismiss for improper venue and personal jurisdiction are denied as moot. The motions to dismiss for failure to state a claim remain pending.

I.     **Background**

C.T.K., proceeding anonymously as Jane Doe, filed this suit against App Pro and Choice Hotels on October 1, 2024. These are the facts as Doe alleges them in her amended complaint.

Jane Doe was "trafficked through force and coercion by her trafficker to engage in numerous commercial sex acts." ECF 19, ¶ 30. Doe's trafficker pretended to be her boyfriend. *Id.* Under the pretense of a romantic relationship, he forced Doe to become addicted to drugs and coerced her into participating in commercial sex acts. *Id.* Doe's trafficker trafficked her from January 2014 until December 2015. *Id.* During that period, from July 1, 2014 until March 31, 2015, Doe was trafficked at the Comfort Suites hotel in Appleton, Wisconsin, which is owned by App Pro. *Id.* App Pro is a franchisee of Choice Hotels. *Id.* ¶ 23.

Doe alleges that she was "trafficked an incalculable number of times" at the Appleton Comfort Suites. *Id.* ¶ 32. Doe claims that App Pro and Choice Hotels facilitated her trafficking. *Id.* ¶ 31. Doe alleges that, due to the prevalence of human trafficking in hotels, App Pro and Choice Hotels were both educated and trained on the "red flags" of sex trafficking, such as possession or use of multiple cell phones; lack of control over money or IDs; and "signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior." *Id.* ¶¶ 37–39. According to Doe, the defendants "were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their hotel properties, when enacting and enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of th[e] hotel[s]." *Id.* ¶ 42. She claims App Pro and Choice Hotels had a responsibility to develop policies and staff trainings to prevent sex trafficking at their hotel but failed to do so. *Id.* ¶¶ 46–47, 80.

Doe also claims that App Pro and Choice Hotels knew about the prevalence of sex trafficking at Choice Hotels branded properties. *Id.* ¶ 48. Doe identifies a dozen news stories about sex trafficking at Choice Hotels branded properties. *Id.* ¶ 50. She alleges that Choice Hotels monitors reviews of its properties, and she points to 21 reviews of Choice Hotels properties on Expedia, Google, Trip Advisor, Yelp, each complaining about prostitution happening at the hotels. *Id.* ¶ 51. According to Doe, these reviews and news stories show that Choice Hotels knew that "[t]he use of its branded properties for sex trafficking was not limited to one location or geographic region but was a widespread problem," "[i]ts franchisees and hotel staff were not taking reasonable steps to identify, report, and respond to known or probable sex trafficking occurring at its hotel properties," and "[i]t was, by its acts and omissions, facilitating sex trafficking at its branded properties by providing venues where the trafficking was occurring widely and without sufficient detection or deterrence." *Id.* ¶ 52.

Next, Doe claims that Choice Hotels and App Pro knew that sex trafficking was prevalent at the Appleton Comfort Suites. First, the Comfort Suites "was in a high-crime area with a known history of reports of sex trafficking." *Id.* ¶ 55. Next, the Outagamie County Sheriff's Office "regularly w[as] involved at the subject Comfort Suites from July 1, 2014 to March 31, 2015 for calls regarding sex offenses, illegal drugs, and harassment—all signs of illegal sex trafficking." *Id.* ¶ 56. Doe was not the first trafficking victim to be trafficked at the Appleton Comfort Suites; she alleges that other trafficking victims were exploited at the Appleton Comfort Suites before her, and hotel staff and management ignored obvious "red flags" of their trafficking. *Id.* ¶¶ 57–58. Additionally, Doe claims that App Pro and Choice Hotels knew or should have known about the widespread trafficking at the Appleton Comfort Suites based on non-public sources like internal investigations, customer complaints, surveillance and security systems, and information from law

enforcement. *Id.* ¶¶ 60–61. She claims that, upon information and belief, App Pro "report[ed] numerous instances of suspected sex trafficking to Choice Hotels before and during [her] trafficking." *Id.* ¶ 63.

Doe also alleges that Choice Hotels and App Pro knew or should have known that she was being trafficked at the Appleton Comfort Suites. She points to the following "obvious signs that her traffickers were engaged in sex trafficking":

a.    The hotel rooms in which she was trafficked were frequently paid for with cash or prepaid cards;
b.    Other girls were trafficked at the same hotel at the same time as [her];
c.    [She] and her traffickers would stay for multiple times between July 1, 2014 through March 31, 2015[;]
d.    The front desk gave her trafficker a specific room for them to stay[;]
e.    [She] asked for clean sheets and towels multiple times a day[;]
f.    The traffickers were often present with [her] at check in;
g.    There was heavy foot traffic in and out of [her] room involving men who were not hotel guests;
h.    [She] had around twenty (20) johns every day. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time; and
i.    Other obvious signs of trafficking consistent with the modus operandi of her traffickers and which included well known 'red flags' for trafficking in a hotel.

*Id.* ¶ 65. Based on these signs, Doe alleges, App Pro knew about or was willfully blind to Doe's trafficking. *Id.* ¶¶ 66, 67. Choice Hotels also knew or should have known about Doe's trafficking. *Id.* ¶¶ 68, 69. But neither defendant did anything to stop it. Instead, App Pro and Choice Hotels continued to rent rooms to Doe's traffickers. *Id.* ¶¶ 73–74, 78–79.

According to Doe, Choice Hotels, App Pro, and sex traffickers, including Doe's traffickers, were engaged in a "venture" at the Appleton Comfort Suites. *Id.* ¶ 82. Choice Hotels and App Pro both "received benefits, including increased revenue, every time a room was rented at the Comfort Suites." *Id.* They acted jointly to continue to rent rooms to sex traffickers, including Doe's traffickers, "despite having actual or constructive knowledge of their sex trafficking activity." *Id.*

Sex traffickers were inclined to use the Appleton Comfort Suites because of App Pro and Choice Hotels' minimal interference and failure to develop satisfactory policies to prevent sex trafficking. *Id.* The "venture" was mutually beneficial for all parties: The sex traffickers got a place where they could engage in sex trafficking without interruption or consequence, and App Pro and Choice Hotels received increased revenue. *Id.*

Doe also alleges that Choice Hotels and App Pro were engaged in their own "venture," which facilitated sex trafficking. *Id.* ¶ 83. Choice Hotels and App Pro had a "common incentive to maximize revenue," and did so by renting rooms to traffickers. *Id.* The venture benefitted them by "keeping operating costs low, maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade and by not acknowledging the pervasive nature of sex trafficking in their hotels generally and [the Appleton] Comfort Suites specifically." *Id.*

In Count One, Doe claims that Choice Hotels and App Pro are liable as perpetrators of sex trafficking within the meaning of 18 U.S.C. § 1591, thus violating 18 U.S.C. § 1595(a). *Id.* ¶¶ 90–93. In Count Two, Doe claims that Choice Hotels and App Pro are liable as beneficiaries of sex trafficking within the meaning of 18 U.S.C. § 1591, thus violating 18 U.S.C. § 1595(a). *Id.* ¶¶ 94–97. In Count Three, Doe claims that Choice Hotels is vicariously liable for App Pro's violations of the TVPRA. *Id.* ¶¶ 98–102. Doe alleges that App Pro and the staff of the Appleton Comfort Suites acted as actual agents of Choice Hotels and that Choice Hotels is vicariously liable for their "acts, omissions, and knowledge." *Id.* ¶ 84. That is because Choice Hotels subjected App Pro "to detailed standards and requirements regarding the operation of [the Appleton Comfort Suites] through the franchising agreements, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, and expectations . . . ." *Id.* ¶ 85. "Choice Hotels exercised and reserved the right to exercise systemic and pervasive control over [App Pro's]

day-to-day-operation of the [Appleton] Comfort Suites." *Id.* ¶ 87. Doe seeks monetary damages, punitive damages, attorney's fees, and costs. *Id.* at 39–40.

In January 2025, Choice Hotels moved to transfer this case to the Eastern District of Wisconsin, and both defendants moved to dismiss the claims against them. ECF 30 (Choice Hotels) & 36 (App Pro). Choice Hotels asserts that venue is improper in this district, that Doe fails to state a claim, and that the action should be dismissed or transferred to the Eastern District of Wisconsin. App Pro moves to dismiss for lack of personal jurisdiction, for improper venue, and for failure to state a claim. The motions are fully briefed. *See* ECF 30-1, 39, 42 (Choice Hotels); ECF 36-1, 43, 46 (App Pro). A hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2025).

## II.    Discussion

Choice Hotels moves to transfer this case to the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1404(a) or, in the alternative, to dismiss or transfer this case for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). Because the Court finds that transfer is warranted under § 1404(a), it need not decide whether Doe has established that venue is proper in this district. *See Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 616–17 (D. Md. 2002) (transferring case pursuant to § 1404(a), even though venue was proper); *see also CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 731 (D. Md. 2017) (noting that a court has discretion to transfer a case pursuant to § 1404(a), even if venue is proper, when another jurisdiction "is a more convenient venue for the parties and witnesses and . . . transfer is in the interest of justice"). The Court also need not determine whether it may exercise personal jurisdiction over App Pro. As explained below, when jurisdiction over a defendant is doubtful, "transfer is often the better course." *See Pilz v. Pere*, No. CCB-07-1314, 2007 WL 2572433, at *1 (D. Md. Aug. 30, 2007)

(citing *Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F. Supp. 116, 120 (D. Md. 1995)).

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought . . . ." When deciding a motion to transfer under § 1404(a), a court must first consider "whether the plaintiff could have brought the action in the transferee forum." *Gibbs v. Stinson*, 421 F. Supp. 3d 267, 288 & n. 38 (E.D. Va. 2019) (quoting *Wenzel v. Knight*, No. 3:14cv432, 2015 WL 222179, at *1 (E.D. Va. Jan. 14, 2015)), *aff'd sub nom. Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286 (4th Cir. 2020). Indeed, "transfer is possible only if venue and personal jurisdiction are proper in the transferee forum." *Corry v. CFM Majestic, Inc.*, 16 F. Supp. 2d 660, 663 (E.D. Va. 1998). "[T]hese requirements cannot be waived." *Id.*; *see also Hoffman v. Blaski*, 363 U.S. 335, 342–44 (1960) (holding that "where it might have been brought" does not mean "where it may now be rebrought, with defendants' consent").

If the plaintiff could have originally brought the action in the transferee jurisdiction, the court "weigh[s] in the balance a number of case-specific factors" to determine whether transfer is warranted. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Those factors are: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Tr. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). In weighing these factors, the court retains discretion to grant or deny a motion to transfer based on its "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S 612, 622 (1964); *see CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d 757, 771 (D. Md. 2009) ("The decision whether to transfer venue is committed to the sound discretion of the

trial court."). A court may transfer the action to another district even if it lacks personal jurisdiction over one or more defendants. *See Ulman v. Boulevard Enters., Inc.*, 638 F. Supp. 813, 815 (D. Md. 1986). A defendant seeking to transfer venue "must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *CoStar Realty*, 604 F. Supp. 2d at 770 (quoting *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 711 (D. Md. 2002)).

Here, there is no dispute that this case "might have been brought" in the Eastern District of Wisconsin. *See* 28 U.S.C. § 1404(a). Venue is proper in the Eastern District of Wisconsin because "a substantial part of the events or omissions giving rise to the claim"—Doe's alleged trafficking—occurred there. *See* 28 U.S.C. § 1391(b)(2). And Choice Hotels, by moving to transfer this case to the Eastern District of Wisconsin, has implicitly conceded that court has personal jurisdiction over it because the transferee court must have personal jurisdiction over all defendants. In a nearly identical case in this district, Choice Hotels recently conceded that the court in the franchisee's jurisdiction may exercise personal jurisdiction over it. *See Doe v. Choice Hotels Int'l, Inc.*, No. TDC-24-1598, 2025 WL 2108792, at *12 (D. Md. July 28, 2025). Moreover, in other nearly identical TVPRA cases, courts have agreed that the court in a franchisee's home jurisdiction may exercise personal jurisdiction over an out-of-state franchisor. *See, e.g., E.S. v. Best Western Int'l, Inc.*, 510 F. Supp. 3d 420, 434 (N.D. Tex. 2021) (exercising personal jurisdiction over out-of-state franchisor because the plaintiff "ha[d] alleged a causal connection between [franchisor's] contacts and her injuries as a result of her sex trafficking in the specified hotel locations"); *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155, 2020 WL 6318707, at *12–13 (N.D. Cal. Oct. 28, 2020) (holding that the plaintiff had adequately pleaded agency relationship between Choice Hotels and California franchisee that supported an exercise of personal jurisdiction over Choice Hotels); *Doe*

8

*S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194, 2020 WL 1244192, at *3 (S.D. Ohio Mar. 16, 2020) (exercising personal jurisdiction over franchisor because the plaintiff "ha[d] alleged a causal connection between [franchisor's] activities managing hotels in the state of Ohio," where the plaintiff was trafficked, "and the harm to plaintiff as a result of her sex trafficking in these hotel locations"). As no party disputes, this action could have been brought in the Eastern District of Wisconsin.

Next, the Court considers the four transfer factors to determine whether Choice Hotels has met its burden of showing transfer is warranted.

The first factor—the plaintiff's choice of venue—generally "is entitled to substantial weight in determining whether transfer is appropriate." *Plumbing Servs*, 791 F.3d at 444 (quoting *Bd. of Trs. of Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007)). "However, where the chosen venue is neither the plaintiff's 'home,' nor is it where the 'events giving rise to the litigation' occurred, the significance of plaintiff's choice understandably is diminished." *Smellie v. Marriott Int'l, Inc.*, No. PX-23-2121, 2023 WL 7487183, at *3 (D. Md. Nov. 13, 2023) (quoting *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 779 (D. Md. 2009)). Here, Maryland is not Doe's home; Wisconsin is. And while the franchisor, Choice Hotels, is headquartered in Maryland, the events giving rise to the litigation—Doe's trafficking—occurred at the Comfort Suites in Appleton, Wisconsin. Under these circumstances, the Court does not give substantial weight to Doe's choice of venue.

The remaining three factors weigh strongly in favor of transfer.

"The convenience of the witnesses is 'perhaps the most important factor' in determining whether a transfer of venue should be granted." *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 473 (D. Md. 2008) (quoting *Cronos Containers Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466

(D. Md. 2000)). Though some Choice Hotels corporate witnesses are likely in Maryland, the principal witnesses are likely in Wisconsin. The principal witnesses are Doe, the alleged traffickers, the Appleton Comfort Suites hotel staff who interacted with the traffickers, and local law enforcement who investigated trafficking at the hotel. These key witnesses outnumber any witnesses with ties to Maryland, and they are far more likely to be in the Eastern District of Wisconsin, where the Appleton Comfort Suites is located and the alleged trafficking occurred, than they are to be in Maryland. Even if some of the witnesses have moved away from Wisconsin, there is no reason to believe the District of Maryland is a more convenient forum for them than the Eastern District of Wisconsin. And because the principal witnesses are likely hundreds of miles from this district, they are likely not within the Court's subpoena power. *See* Fed. R. Civ. P. 45(c)(1)(A) (providing that a subpoena may command a person to attend a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person"). Doe's counter is that any witnesses beyond the subpoena power of the Court can appear for depositions virtually. That may be true, but that does not solve the problem of compelling their in-person appearance at trial. Choice Hotels has shown that the Eastern District of Wisconsin is likely the more convenient forum for the principal witnesses.

The convenience of the parties also favors transfer. "[A] transfer of venue that merely switches the inconvenience from one party to the other generally will be refused." *Pinpoint IT Servs., L.L.C. v. Atlas IT Export Corp.*, 812 F. Supp. 2d 710, 721 (E.D. Va. 2011). Here, a transfer of venue will not merely switch inconvenience from one party to another. Both the plaintiff and one of the two defendants, App Pro, are in Wisconsin. Though Choice Hotels is headquartered in Maryland, it is willing and able to litigate this case in Wisconsin. Doe argues the District of Maryland is more convenient for the parties because there are several other TVPRA cases against

Choice Hotels pending in this district and that "the potential benefits of centralizing related TVPRA cases against Choice [Hotels] in this District . . . are legitimate considerations when determining whether Maryland provides a convenient forum for Plaintiff to obtain relief." ECF 39, at 34–35. Regardless of whether that argument is a valid reason to refuse a transfer, the facts have changed since Doe filed her opposition brief. Two of the "related TVPRA cases" against Choice Hotels (which also were brought by Doe's counsel) have been transferred to the franchisee hotel's jurisdiction. *See Doe v. Choice Hotels Int'l, Inc.*, No. GLR-24-3774, 2025 WL 2197035, at *7 (D. Md. Aug. 1, 2025) (transferring case to Idaho); *Doe*, 2025 WL 2108792, at *13 (transferring case to Florida). Many of the other related TVPRA cases have pending motions to transfer. *See* ECF 30 in *Doe v. Choice Hotels Int'l, Inc.*, No. TDC-24-3769 (D. Md. Dec. 30, 2024); ECF 7 in *Doe v. Choice Hotels Int'l, Inc.*, No. PX-24-3775 (D. Md. Dec. 30, 2024); ECF 18 in *Doe v. Choice Hotels Int'l, Inc.*, No. DKC-24-3776 (D. Md. Dec. 30, 2024). For two out of three parties in this case (including Doe who, through counsel, opposes transfer to her home state), the Eastern District of Wisconsin is more convenient, and the third party, Maryland-based Choice Hotels, is willing to litigate this case in that district.

Lastly, the Court considers whether transfer is in the interest of justice. "This factor is amorphous and somewhat subjective, and allows a court to consider many things." *Doe*, 2025 WL 2197035, at *7 (quoting *Gennari Consulting, Inc. v. Wellington Corp., LLC*, No. ELH-19-1851, 2019 WL 6829102, at *9 (D. Md. Dec. 13, 2019)). A court may consider the need to avoid duplicative litigation and the need to conserve judicial resources. *Id.*; *see also D2L Ltd.*, 671 F. Supp. 2d at 784 (finding that the avoidance of duplicative litigation was in the interest of justice and supported transfer); *see generally Sorcia v. Holder*, 643 F.3d 117, 123 (4th Cir. 2011) (concluding that transfer of immigration petition for review to other circuit court would not be in

the interest of justice when transfer would waste the transferee court's time). Courts in this district have found the interest of justice favors transfer when personal jurisdiction over an indispensable party is a close question. *See Joseph M. Coleman*, 887 F. Supp. at 120 (finding transfer appropriate under § 1404(a) because doing so would avoid the unnecessary "inject[ion]" of close personal jurisdiction question into case and noting that "[i]t would not be in the interest of any of the parties or any of the witnesses to litigate this case in Maryland, only to have a ruling upholding the assertion of jurisdiction over [the defendant] reversed on appeal"); *Harry & Jeanette Weinberg Found. Inc. v. ANB Inv. Mgmt. & Tr. Co.*, 966 F. Supp. 389, 392 (D. Md. 1997) (same); *Tyler v. Gaines Motor Lines, Inc.*, 245 F. Supp. 2d 730, 734 (D. Md. 2003) (finding transfer in the interest of justice because subjecting the defendant to the court's personal jurisdiction—which was a "close" question—"would inject into the case an unnecessary legal issue that would render the entire litigation null and void if, on appeal, jurisdiction were found to be lacking"); *Chesaco Motors, Inc. v. Gulf Stream Coach, Inc.*, No. JFM-09-1589, 2009 WL 2381338, at *1 (D. Md. July 30, 2009) (noting that "this court has held that a transfer under § 1404(a) is appropriate to avoid infecting the litigation at the outset with a fatal error"); *Pilz*, 2007 WL 2572433, at *1 (finding it in the interest of justice to transfer case because personal jurisdiction was "doubtful" and "all the events at issue in this case took place" in transferee state, between residents of the transferee state).

  Here, the interest of justice weighs in favor of transfer. Whether this Court may exercise personal jurisdiction over App Pro is, at the very least, doubtful. In two nearly identical TVPRA cases against Choice Hotels and its franchisees, judges in this district recently found there was no personal jurisdiction over the nonresident franchisee because the plaintiff's TVPRA claims did not arise out of or relate to the franchisee's contacts with Maryland. *See Doe*, 2025 WL 2197035, at *3 ("This Court finds Doe's allegations here do not go beyond routine business transactions of a

typical franchising relationship, and do not sufficiently relate to [franchisee's] actions regarding sex trafficking, which largely occurred in Idaho."); *Doe*, 2025 WL 2108792, at \*7 (noting that the plaintiff's complaint and other exhibits did not "provide[] any facts about any actual payments from traffickers being sent to or processed in Maryland" and that the franchisee's "general payment of monthly franchise fees" and "other general contacts such as [the franchisee's] use of Choice's national reservation system" were not "sufficient to satisfy the relatedness prong"). The allegations against the nonresident franchisees in those cases are materially indistinguishable from Doe's allegations against App Pro. As in those cases, Doe's TVPRA claims against App Pro do not appear to arise out of or relate to App Pro's contacts with Maryland. Whereas this Court's personal jurisdiction over App Pro is highly doubtful, there is no doubt that the Eastern District of Wisconsin has personal jurisdiction over App Pro. If this Court were to exercise personal jurisdiction over App Pro, it would inject "an unnecessary legal issue [into the case] that would render the entire litigation null and void if, on appeal, jurisdiction were found to be lacking." *See Tyler*, 245 F. Supp. 2d at 734. And if this Court did not exercise personal jurisdiction over App Pro and Doe filed her claims against App Pro in the Eastern District of Wisconsin, it would be judicially inefficient for Doe to pursue those claims there and her claims against Choice Hotels here because the claims against both defendants are based on the same allegations and their resolution will involve the same witnesses and same legal issues. The more prudent and efficient course of action is to transfer Doe's TVPRA claims to the Eastern District of Wisconsin, where the alleged trafficking occurred, where App Pro and Choice Hotels are subject to personal jurisdiction, and where Choice Hotels has agreed to litigate this case. The interest of justice favors transferring this case to the forum where the events giving rise to the claims occurred so that Doe

may pursue her TVPRA claims against Choice Hotels and App Pro in a single lawsuit uninfected with a potential legal defect at the outset.

Three of the four factors heavily favor transfer. The only factor that may favor denying transfer—the plaintiff's choice of venue—is not afforded substantial weight because Doe lives in Wisconsin, not Maryland, and the alleged trafficking occurred in Wisconsin, not Maryland. Pursuant to 28 U.S.C. § 1404(a), the Court transfers this case to the U.S. District Court for the Eastern District of Wisconsin.

## III.    Conclusion

This action belongs in Wisconsin, not in Maryland. Choice Hotels' motion to transfer is granted. Choice Hotels' and App Pro's motions to dismiss for improper venue and personal jurisdiction are denied as moot. The motions to dismiss for failure to state a claim remain pending. This action is transferred to the U.S. District Court for the Eastern District of Wisconsin. A separate order follows.

Date: August 22, 2025

Deborah L. Boardman
United States District Judge